# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

### Amarillo Division

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY - 4 2021
CLERK, U.S. DISTRICT COURT
By_____ Deputy

**UNITED STATES OF AMERICA**

v.

**ROGELIO XOCHITL AMPARAN**

Movant

Case number: 2:17-CR-00055-D-BR(3)

## MOTION FOR IMMEDIATE RELEASE

Movant, comes pro se, and moves the court for immediate release on the basis of the First Step Act of 2018, Pub. L, 115-391, 132 Stat. 5194 (2018) and tied to the CARES act and related memorandums issued by Attorney General William

1.

Barr initially urging the release of certain federal inmates who are most vulnerable to contract COVID-19 and later followed with specific clarifications and addendums. This motion is based on the attached points and authorities, the declaration of petitioner, and any testimony or evidence adduced at the hearing on this motion.

This motion is submitted pursuant to a denial from the administrator at the Reeves County Detention Center in Pecos, Texas, to a Compassionate Release request submitted by the movant on February 9, 2021. (See attachment A). Subsequent requests have not been responded to.

### Introduction

Movant moves the Court for an order granting the described relief as he is in a prison environment that is conducive to tightly quartered social interaction and he is part of the group of Americans who are at high risk contracting and suffering serious complications from COVID-19. The court has already found that the spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenge for the nation and poses a serious issue for prisons due to the infectious nature of preexisting diabetes when exposed to COVID-19. It is well established that the Risk of Death from a worldwide pandemic is an extraordinary and compelling reason to grant compassionate release.

Rogelio Xochitl Amparan, who is a 33 year old non-violent, convicted federal inmate currently detained at the Reeves County Detention Center, is among the group of people the Centers of Disease Control and Prevention (CDC) has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world and through every state and city in the United States and has, to date, has infected 31.5 million and caused the death of at least 564,000 Americans. And, the risk of further spread has now been increased once again.

2

The Movant was sentenced on December 5, 2017, to serve a term of 189 months for Possession With Intent to Distribute 500 Grams or More of Methamphetamine. His projected release date from BOP custody is November 9, 2030.

On Thursday, March 27, 2020, U.S. Attorney General William Barr directed the Bureau of Prisons to increase the use of home confinement among older inmates and those with underlying medical conditions as a means to mitigate the spread of COVID-19 within the country's prison system. As of Monday, April 19, 2021, 46,956 inmates and 6834 staff members have tested positive for COVID-19 in federal facilities. Two hundred thirty federal inmates and four staff members have died as a result of the virus. Attorney General Barr stated in a virtual press conference: "There are particular concerns in this institutional setting. We want to make sure that our institutions don't become Petri dishes and it spreads rapidly through a particular institution. We have the protocols that are designed to stop that, and we are using all the tools we have to protect the inmates." In his memorandum to BOP Director Michael Carvajal, Barr explained that the assessment of federal inmates is necessary given the current pandemic. He further stated: "Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some inmates, home confinement might be more effective in protecting their health." In this way, the Attorney General has asked the BOP to consider a range of discretionary factors when determining which inmates should qualify for home confinement. While the guidelines are discretionary, key considerations mentioned during his virtual press conference included (1) the age and vulnerability of the inmate to COVID-19; (2) the inmate's conduct while in prison; (3) and whether the inmate poses danger to the community based on his or her crime.

Based on the government and CDC reports, the health risk to Mr. Amparan is heightened because he is part of the group considered most vulnerable to COVID-19. This is due to his immediate living conditions, population density at the facility, and lack of appropriate preventative measures employed at the facility. Mr. Amparan, therefore, respectfully requests that he be granted an order for his immediate release along any form of monitoring deemed appropriate by the supervising authorities.

### *Movant Asks this Court to Grant Mr. Amparan Compassionate Release and Reduce His Sentence to Time Served*

In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping function and to allow inmates to directly file compassionate release motions in certain circumstances. See 18 U.S.C. § 3582 (c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for a sentencing reduction if three requirements have been satisfied. First, the Court must determine either that (a) the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or that (b) 30 days have elapsed since the receipt of such a request by the warden or the defendant's facility. Second, the Court must determine that "extraordinary and compelling reasons warrant a reduction....and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c)(1)(A)(i). Third, the Court may reduce a defendant's sentence after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).

A. Mr. Amparan has satisfied the exhaustion requirement because he has been denied by the Reeves Facility Administrator and there has been no further response to his subsequent request.
B. Mr. Amparan is eligible for compassionate release because his heightened vulnerability of COVID-19 is an extraordinary and compelling circumstance that weighs in favor of immediate release. The First Step Act empowers this Court to make an independent determination as to whether there are extraordinary and compelling reasons for compassionate release. The Court is no longer required to defer to the BOP's determination of whether such circumstances exist. Rather than deferring to the BOP, the First Step Act directed courts to consider whether releasing Mr. Amparan will not only potentially save his life but will also protect the inmates and staff at the Reeves Detention Center, as well as the broader community. Furthermore, this Pro Se Motion is specifically made upon "extraordinary and compelling" reasons, as set forth in the First Step Act, (FSA) of 2018 which permits a prisoner's

4

sentence to be reduced based upon demonstrated rehabilitation which show that the movant is no longer a threat to the community as noted by a least one court. When a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in the United States Sentencing Guidelines §1B1.

### *Factual Background*

As of April 19, 2021, the new strain of coronavirus which causes COVID-19, has infected nearly 138 million people, leading to at least 2.97 million deaths worldwide. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.

Currently, the community of Pecos, Texas and all surrounding counties are experiencing a COVID-19 outbreak via community transmission. An outbreak is where a large number of people suddenly become ill. Due to the State of Emergency declared area wide, public health officials recommended community actions to reduce people's risk of being exposed to COVID-19, particularly, the Centers for Disease Control and the United States federal government has recommended social distancing. The governor of Texas had to declare a stay at home order along with various other restrictions and is currently revisiting these orders due to a recent rise in confirmed cases.

The CDC has issued guidance that individuals at higher risk of contracting COVID-19 such as those people with chronic medical conditions, take immediate preventative actions, including avoiding crowded areas and staying home as much as possible. These criteria address the exact profile and situation of Mr. Amparan. With thousands of confirmed cases in the Pecos area that indicate community spread, every necessary action must be taken to protect vulnerable populations and the community at large.

### *Release Plan & Requirements*

A major component of the release from incarceration protocol is establishment of an approved re-entry plan. Mr. Amparan has an appropriate re-

entry plan that will make transition from prison to home confinement a relatively seamless step. The following components of his BOP re-entry plan are:

- ✓ He will be released to live with either his ex-wife or his mother and sister.
- ✓ The location meets the requirements of the U.S. Probation Department
- ✓ The required telephone connection for probation monitoring will be installed
- ✓ Health insurance will be provided by the family or through his employer.
- ✓ He will obtain employment through his brother who owns a carpentry business.

The second major consideration of release is directly related to the inmate's rating as a security risk and his likelihood of returning to prison after release. In these measurements, Mr. Amparan has been evaluated to have a "low" community risk and a "low" likelihood of committing another crime resulting in a return to prison.

### *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease. Inmates cycle in and out of federal detention facilities from all over the country, and people who work in the facilities, including correctional officers, and care service providers leave and return daily, without consistent screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in prison facilities. Many people who are incarcerated also have chronic conditions, such as diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," "infection control is challenging in these settings." Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons. Secretary of State Mike Pompeo has called for Iran to release

6

Americans detained there because of the "deeply troubling" "reports that COVID-19 has spread to Iranian prisons," noting that "their detention amid increasingly deteriorating conditions defies basic human decency. Courts across Iran have granted in excess of 54,000 inmate furloughs as part of the measures to contain coronavirus across the country. In the U.S. steps have already been taken in some jurisdictions to facilitate release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing of admission of individuals arrested on non-violent misdemeanor charges. Additionally, given the recent conference and memorandum issued by Attorney General Barr, *it is evident that the United States government is willing to reduce the inmate population by releasing those who are most at risk.*

### *Specific Vulnerability Factors of Mr. Amparan*

Mr. Amparan has been incarcerated at the Reeves Detention Facility where the conditions prohibit the ability to remain safe within the COVID protocol. Furthermore, the medical attention afforded inmates is sub-standard due to the high inmate population and minimal staff allocations that exist.

### *Conclusion*

Mr. Amparan is undoubtedly among and exposed to the highly vulnerable population and is at maximum risk of contracting COVID-19. His prison housing conditions consist of a 54-person dorm room, along with communal showers, rest rooms, communal computer and phone usage, thus prohibiting social distance protocol. Food is prepared and served by fellow inmates. Furthermore, Mr. Amparan, as evaluated via the official Federal Bureau of Prisons adopted risk instrument, poses a low public risk and carries a low rating relative to likelihood of recidivism.

During his incarceration thus far, Mr. Amparan has demonstrated a high level of integrity and responsibility in carrying out his obligations as a prison inmate. He has provided valuable, immeasurable service and respect to his fellow inmates, as well as to institutional staff. He has received just one minor disciplinary report throughout his incarceration.

Furthermore, he has successfully completed several self-improvement and educational programs including Parenting, Anger Management, Preparation for Employment, Drug Abuse Education, and Automobile Mechanics. This is an formidable list of accomplishments in the time Mr. Amparan has been incarcerated and serves to demonstrate his commitment as a viable candidate for the relief he seeks.

Lastly, regarding his family situation, Mr. Amparan's is the only male figure within his home and family. His father is in Mexico and has no connection to the family. His brother was kidnapped and then killed in Mexico leaving two children that Mr. Amparan will need to raise and support.

Movant also asks the Court to apply the following: "where a document filed 'Pro Se'.....be liberally construed" (United States v. Seliner, 773 F. 3d 927, 8th Circuit 2014) and that motion be "held to a less stringent standard than formal pleadings "by a lawyer."

With the above facts in place, Mr. Amparan should be granted immediate modification of sentence pursuant to U.S.C. §3582 as a result of the COVID-19 Pandemic that currently exists in our country and specifically, in the Pecos, TX area, along with any form of monitoring deemed necessary by supervising officials.

Respectfully submitted,

*Sophia Xochitl Amparan*

Rogelio Xochitl Amparan

Register 55783-177

Reeves County Detention Center

PO Box 1560

Pecos, TX  79772

04/26/21

Date

8



Sincerely,

LaVaughn Garnto, CCE
Facility Administrator
Reeves County Detention Center I/II
P.O. Box 1560
Pecos, Texas 79772


cc:    file

